**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| JANICE JONES, | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO.: |
| | ) | |
| v. | ) | |
| | ) | |
| WALMART, INC., | ) | |
| | ) | |
| WAL-MART.COM, | ) | |
| (a/k/a Wal-Mart Logistics) | ) | |
| | ) | |
| And | ) | |
| | ) | |
| WALMART FULFILLMENT | ) | |
| SERVICES, LLC, | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S COMPLAINT FOR EQUITABLE RELIEF AND DAMAGES

COMES NOW Plaintiff Janice Jones ("Mrs. Jones or "Plaintiff") and files this Complaint against Walmart, INC. [sic], Wal-Mart.com, (Wal-Mart Logistics), and Walmart Fulfillment Services, LLC, (hereinafter referred to as "Defendants"), through undersigned counsel, showing the court as follows:

## INTRODUCTION

1.

This action is brought by Plaintiff for damages and equitable relief pursuant

to The Family Medical Leave Act, ("FMLA"), 29 U.S.C. §§ 2601 <u>et seq.</u>, and its implementing regulation at 29 C.F.R. §§ 825.101 <u>et seq.</u>; for violations of the Fair Labor Standards Act ("FLSA"); violations of Title I of the Americans with Disabilities Act of 1990, as amended, ("ADA/ADAAA"), 42 U.S.C. §12101 <u>et seq.</u>, Sex/gender discrimination and retaliation to recover (1) lost pay, vacation, retirement benefits and healthcare benefits, (2) compensatory damages for physical and emotional distress; (3) interest on her damages, calculated at the prevailing rate; (4) punitive damages; (5) her costs of litigation, including her reasonable attorney's fees; (6) unpaid overtime wages; and (7) liquidated damages.  Plaintiff also seeks equitable relief, including reinstatement to her employment or front pay in lieu of reinstatement.

## <u>JURISDICTION AND VENUE</u>

### 2.

Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 12117, 42 U.S.C. § 2000e, 29 U.S.C. § 203, (FLSA) 29 C.F.R. Part 825 (FMLA), 28 U.S.C. §§ 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 28 U.S.C. §§ 2201 and 2202 (declaratory judgment).

### 3.

Venue is proper in this district and division under 28 U.S.C. § 1391 because

Defendants maintain offices conducting regular business in the Northern District of Georgia, Atlanta Division, and the claims arose within the district and division of the Court.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

### 4.

All conditions precedent to this lawsuit within the meaning of Fed. R. Civ. P. 9(c) have been performed or otherwise occurred or have been prevented by the action or inactions of Defendants. Plaintiff timely filed a charge of discrimination against Defendants, with the Equal Employment Opportunity Commission, ("EEOC") and a "Notice of Right to Sue" was issued by the EEOC. Plaintiff's Charge to the EEOC served to provide notice of the Charge to Defendants and Defendants was afforded the opportunity to participate in the investigation and conciliation of this Charge. This action is filed within ninety (90) days of the Plaintiff's receipt of the "Notice of Right to Sue." Thus, administrative remedies have been exhausted.

## PARTIES

### 5.

Plaintiff, Mrs. Jones, is an adult American citizen and resident of Douglas County, Georgia. As such, she is entitled to bring actions of this type and nature. She submits herself to the jurisdiction and venue of this Court.

6.

Mrs. Jones was an "employee" of Defendants as defined by 42 U.S.C. § 12111(4).

7.

Mrs. Jones is, and at all times relevant hereto, an individual with a disability as that term is defined by 42 U.S.C. § 12102(1).

8.

Mrs. Jones is a person with a disability because she has actual physical impairments-Multiple Sclerosis, causing substantial limitations in one or more major life activities, because she has a record of impairment, and because Defendants regarded her as having an impairment.

9.

Mrs. Jones was capable of performing the essential functions of her job with or without accommodation.

10.

Plaintiff was also an "employee" as defined by the Fair Labor Standards Act, 29 U.S.C. § 203(e)(1).

11.

Plaintiff was an "eligible employee" as defined by FMLA *"because she was employed for at least 12 months"* as an Area Manager, and had worked *"more than the 1250 hours"* required by FMLA.

12.

Defendants are a private for-profit, foreign company registered with the Georgia Secretary of State, that were at all times relevant to this action licensed to do business in the state of Georgia, engaged in commerce or industry affecting commerce, employing in excess of fifteen (15) employees, for each working day in each of the twenty (20) calendar weeks in the current or preceding calendar year and located in the state of Georgia, in this federal district and this division. At relevant times hereto, Defendants have maintained their offices, conducting regular, not isolated acts of business in multiple Georgia counties, and in the Northern District of Georgia, Atlanta Division.   As such Defendants are subject to personal jurisdiction in Georgia.

13.

Defendants are an "employer" within the meaning of the ADA/ADAAA, 42 U.S.C. § 12111(5); within the meaning of 2000e.

14.

Defendants are an "employer" as defined by FMLA, 29 U.S.C. §2611(4) as Defendants is *"engaged in an industry or activity affecting commerce who employs 50 or more employees for each of 20 or more calendar workweeks in the current or preceding calendar year…"* and knew or should have known its responsibilities under FMLA.

15.

Defendant Walmart Fulfillment Services, LLC may be served with process of service of the Complaint and Summons via their Registered Agent, C T Corporation System, 289 S. Culver Street, Lawrenceville, Georgia 30046.

16.

Defendant Walmart, INC. may be served with process of service of the Complaint and Summons via its registered agent, The Corporation Company, 106 Colony Park Drive, Ste. 800-B, Cumming, Georgia, 30040-2794.  Wal-Mart.com may be served at the same location.

17.

At all times relevant to this action, Defendant Walmart, INC. [sic] was the sole owner or parent company of Wal-Mart.com and Walmart Ecommerce Fulfillment Center 8240 (a/k/a Walmart Logistics) which is located at 6055 South

Fulton Parkway, Atlanta, Georgia 30349 where Plaintiff reported to work.

## **FACTS**

### 18.

As above, Mrs. Jones was, at all times relevant to this action, an employee of Defendants.

### 19.

Mrs. Jones was employed by Defendants as Area Manager from July 3, 2018 until her termination on November 1, 2019 to work four (4) 10 hour shifts per week.

### 20.

From July 2018 until in or around April of 2019, Mrs. Jones enjoyed a successful, uneventful tenure with Defendants.

### 21.

In or around April 2019, Clifton Jackson became Mrs. Jones' new supervisor.

### 22.

By May 2019, there was a change in Mrs. Jones' relationship with Defendants.

23.

It was around that time that Clifton Jackson and Donald Lank pulled Mrs.

Jones off the Remedy Project and replaced her with a male peer, Tavoris Storr.

Lank and Jackson blamed Mrs. Jones for systems issues that caused a pallet pileup

in the warehouse.  Mrs. Jones requested an "Open Door" with General Manager

Kelvin Hall about this fictitious claim.  In retaliation, Lank and Jackson threatened

to terminate Mrs. Jones if she did not move to the weekend shift.  Mrs. Jones called

the Ethics Hotline to complain, and she complained to the then Director, Jason

Carter about the retaliation.  Carter told Mrs. Jones to speak to Lank about it. Lank

and Jackson began ignoring Mrs. Jones in meetings.  When Lank or Jackson

walked into a room, they would speak to all of Mrs. Jones' peers but not to her.

24.

By May 2019, Jackson had already given Mrs. Jones a negative evaluation

and told her that other employees did not like her.

25.

On or around June 1, 2019, Jackson again told Mrs. Jones that none of the

employees liked her.  Jackson began undermining any authority that Mrs. Jones

may have had with regard to other employees to the point where two female leads,

Nina and Jessica Williams, came to talk to Plaintiff about how Jackson was

behaving toward women, and how they felt that department was going to be "in trouble" due to Jackson undermining of Plaintiff's authority.

26.

Mrs. Jones brought the two female leads into Jackson's office for an "Open Door" meeting to discuss this issue.

27.

Jackson quickly dismissed the two lead employees and informed Plaintiff that she may not "Open Door" him with leads again. Jackson's behavior did not improve.

28.

On or around June 14, 2019, Mrs. Jones met with Human Resources to complain of Jackson's behavior toward women.  Mrs. Jones told H.R. that Jackson twice had told her that none of the employees liked her and that Jackson was causing confusion in the department by undermining any authority that Mrs. Jones may have had to assign tasks to employees in the department.

29.

H.R. asked Mrs. Jones to write a statement about this complaint which Mrs. Jones did and filed the statement with H.R.

30.

Upon information and belief, nothing was done about this complaint and the
behavior continued and worsened.

31.

Jackson often sat in his office with the door closed talking and laughing with
Mrs. Jones' male peers.  Mrs. Jones was not invited.  In fact, she was dismissed
from the office, sent to perform work while Jackson and the male peers continued
talking and laughing.  Mrs. Jones was excluded from these conversations.  When
Mrs. Jones reported this to Davida in H.R., Davida responded "Do you want to be
in there?"

32.

On July 4, 2019, Mrs. Jones and others stayed late to clean the "T-Racks."
On July 5, 2019, Jackson made cleaning assignments to all of the managers.  The
"T-Racks" which had been cleaned the night before by Mrs. Jones and her group
were assigned to Justin Crutchfield for cleaning.  Crutchfield was Mrs. Jones' peer,
with whom Jackson spent a lot of time and affectionately referred to as "Smiley."
The T-Rack area and the Dock area were the only areas assigned to "Smiley." Mrs.
Jones was assigned the damage area, remedy, assortments, and the noncom area.
None of Mrs. Jones' areas had been cleaned the night before.

33.

When Mrs. Jones asked Jackson to split up the work more evenly, Jackson began yelling at Mrs. Jones, coming very close to her person as if to scare her. Mrs. Jones asked for a mediator, more specifically, Don, Stacy or someone from H.R. Jackson's response was to come even closer to the person of Mrs. Jones.

34.

Mrs. Jones could not find someone to mediate at that time. Sandy Seide called Mrs. Jones back later that morning. Seide and Jackson frequently went to lunch together. Seide told Mrs. Jones that she and Jackson had to get along. According to information and belief, no other intervention occurred on behalf of Mrs. Jones. Stacy Wilson from H.R. took Mrs. Jones' statement later that day.

35.

On or around July 7, 2019, Mrs. Jones was approved for intermittent FMLA. Pursuant to company policy and procedure, Jackson would have been informed of the FMLA approval.

36.

On or around July 10, 2019, Ms. Wilson followed up with Mrs. Jones about her complaint and suggestion that she meet with Orly, the Ethics Manager. Orly came to the conclusion that Jackson should make a department speech to tell

everyone that Mrs. Jones was the manager and that the employees should refrain from bypassing Mrs. Jones by talking with Jackson.  Orly told Jackson this conclusion, however Jackson never followed through with this remedy.

37.

On or around July 12, 2019, while Mrs. Jones was out for FMLA leave, Jackson texted Mrs. Jones to ask her what day she would be working overtime that week.

38.

Mrs. Jones was hired to work four (4) ten-hour days per week.  Most of the time, during Mrs. Jones' tenure with Defendants, overtime was mandatory which meant that Mrs. Jones worked 5 or 6 ten-hour days per week.

39.

On or around July 29, 2019, Defendants implemented a new yard check process.

40.

As Traffic Manager, Mrs. Jones' role was written in the policy as "responsible for correcting virtual/physical mismatches in YMS for inbound trailers."  This is a task that is done inside the building.

41.

Jackson's role, as Operations Manager, included "participating on outbound full trailer audit" and "proper implementation of yard audits."

42.

Yard audits required outside work, in trailers where there is no air conditioning or heat.

43.

According to information and belief, Jackson did not participate in these audits but instead assigned them to Mrs. Jones.

44.

Jackson did not assign this task to Mrs. Jones' male peers.

45.

Although Jackson claimed that this task was performed by others when Mrs. Jones was not at work, according to information and belief, if Mrs. Jones was not at work, the audits did not occur but instead waited for her return.

46.

Performing this task in extreme temperatures exacerbated the symptoms of Mrs. Jones' disability and Jackson knew this.  This task was not an essential

function of her job as Traffic Manager but was instead a marginal job task, assigned to her, outside policy, by Jackson.

47.

Mrs. Jones requested an accommodation of either being relieved from this task or at least having this task rotated between her and her peers during extreme temperatures.

48.

Mr. Jones' accommodation was denied and an alternative accommodation was proposed of waiving the requirements for a transfer.

49.

Mrs. Jones applied for transfer to several jobs of which she was qualified. Mrs. Jones holds a double Bachelor's degree in Information Systems and Transportation Logistics and a Master's degree in Human Resources.

50.

Mrs. Jones was not selected for an interview for ANY of these jobs.

51.

On or around August 9. 2019, Mrs. Jones reported to Davida, in H.R., another incident of bullying behavior from Jackson where Jackson believed that Mrs. Jones was ignoring his phone call to her.  Jackson, a 6 foot, approximately

250 pound man, again screamed at Mrs. Jones and got uncomfortably close to her

5 foot, one inch, 130 pound person.  Mrs. Jones also reported to Davida in H.R.

Jackson's discriminatory behavior and disparate treatment of women.  Davida told

Mrs. Jones to write a statement which she did and filed it with H.R.  As she

finished writing her statement, Stacy Wilson came into the office. Stacy and

Davida told Mrs. Jones that they would turn the statement over to Ethics.  No one

ever got back to Mrs. Jones about this.

52.

On or around August 21, 2019, Defendants failed to follow their own policy

of progressive discipline and rather than issuing a write up for Mrs. Jones' absence,

Jackson and Carla from H.R. issued a Step One discipline for attendance.  This

absence was for a sickness for which Mrs. Jones tendered a doctor's note to

Defendants.  Mrs. Jones' previous supervisor, Kevin O'Connell accepted a

doctor's note and did not discipline Mrs. Jones for absences due to illness because

it was Defendants' policy that managers would not suffer negative consequences

when sick if the employee proffered a doctor's note.

53.

Mrs. Jones reported the Step One to General Manager, Kevin Hall.  No one

got back Mrs. Jones about this.

54.

On or about October 1, 2019, without Mrs. Jones' knowledge, a male,
Thomas Moler, was sent to Indiana to train for the Traffic Manager position.

55.

On or about October 8, 2019, Thomas Moler started telling the employees
that he was the new Traffic Manager.

56.

Mrs. Jones asked both Jackson and Donald Lank about this.  They both
claimed that Mrs. Jones was still the Traffic Manager.

57.

Mrs. Jones did an "Open Door" with Kevin Hall about this.  Hall had
previously told Mrs. Jones that he would help her to get into H.R.

58.

Hall took Mrs. Jones into Lank's office and Lank called Jackson to join this
meeting.  Jackson came into Lank's office and started listing duties that he claimed
Mrs. Jones was not performing satisfactorily.  It was Mrs. Jones' impression that
Jackson was about to terminate her at that time.  Instead, Lank told Jackson that he
must have the data to back up his claim.  Jackson stopped listing Mrs. Jones'
alleged deficiencies.  Mrs. Jones was never previously notified that Jackson felt her

work was deficient and she was not previously given an opportunity to make any
needed improvements.  Although Jackson had previously had "touch base"
meetings with Mrs. Jones in May and June, he stopped having "touch base"
meetings with Mrs. Jones after that time.

59.

Mr. Moler, the male who Defendants trained as the Traffic Manager, has had
skin cancer.  Defendants accommodated his disability by not requiring Mr. Moler
to work outside performing yard audits.

60.

On or about October 17, 2019, Mrs. Jones was called in to meet with
Jackson and Davida from H.R.  Mrs. Jones was placed on a performance
improvement plan.  In this meeting, Davida asked why Mrs. Jones did not do
Traffic Calls from home.  These Traffic Calls required preparation so Mrs. Jones
would have to work during her FMLA leave.  Mrs. Jones was out on her
intermittent FMLA leave on the days when Traffic Calls occurred.

61.

The P.I.P. stated that Mrs. Jones should have regular attendance but Mrs.
Jones' absences were part of her FMLA leave.  The P.I.P. also stated that Mrs.

Jones was not conducting daily yard checks when in fact, Jackson was sending her to do daily yard checks and Jackson knew theses were being done.

62.

In an effort to take some time away from work to understand and plan how she was going to satisfy Jackson's P.I.P., Mrs. Jones forwarded some work emails to her personal address as she had done in the past.  She was not previously reprimanded for forwarding emails.  These emails contained information that was not of value to anyone outside the company and any individuals were referred to by number, not by name.

63.

Jackson had tried for months to get Mrs. Jones to quit her job.  He used these emails to immediately terminate her.

## COUNT I

## Violations of the Fair Labor Standards Act

64.

Plaintiff re-alleges and incorporates by reference each of the foregoing paragraphs of her Complaint as if set forth fully herein.

65.

Plaintiff was regularly compelled and scheduled to work more than forty hours per week.

66.

Plaintiff's job required that she perform mostly manual tasks.  She was not permitted to exercise discretion and independent judgment in matters of significance; she did not possess the authority to hire, fire, or make changes to the status of employees.

67.

The Defendants were required, in accordance with the FLSA, to pay the Plaintiff one and one-half times her regular rate of pay for her hours worked that were over 40 hours in each workweek.

68.

The Defendants failed to pay the Plaintiff one and one-half times her regular rate of pay for each hour worked over forty (40) hours in a week.  Instead, Plaintiff was paid nothing for the hours over forty (40) hours in each work week.

69.

The Defendants' unlawful acts, omissions, and practices concerning the terms, conditions, and provisions of the Plaintiff's employment violate the FLSA.

70.

As a result of Defendants' unlawful acts, omissions, and practices, Plaintiff suffered a loss of wages.

71.

The Defendants' willful violation of the FLSA shows reckless disregard of Plaintiff's right to receive appropriate overtime compensation for her work with Defendants.

72.

Defendants, jointly and severally, owe the Plaintiff pay for work performed but not compensated in an amount to be determined, plus liquidated damages in an equal amount pursuant to 29 U.S.C. §216(b).

73.

Pursuant to Section 216(b) of the FLSA, Defendants owe Plaintiffs, jointly and severally, for reasonable attorney's fees.

## **COUNT II**

### **Violation of Family Medical Leave Act/Interference**

74.

Plaintiff re-alleges paragraphs 1-3, 5,11-12,and 14 through 63 as if fully set forth herein and further alleges

75.

Defendants were well-aware of Mrs. Jones' eligibility for intermittent FMLA leave as due to Mrs. Jones' disability, Multiple Sclerosis, she applied for and was granted intermittent FMLA by Defendants.

76.

Defendants interfered with Mrs. Jones' FMLA rights by 1) using her FMLA-eligible absences as a negative factor in her evaluations; 2) expecting her to attend telephone meetings while on FMLA leave; 3) causing an exacerbation of Mrs. Jones' symptoms ensuring that Mrs. Jones would exhaust her FMLA leave sooner than necessary; 4) attempting to constructively discharge Mrs. Jones by repeatedly unevenly assigning her tasks that exacerbated her disability and 5) preventing her from future use of FMLA leave by terminating her.

77.

Mrs. Jones, as an eligible employee was entitled to 12 workweeks of leave during any 12-month period for her serious health condition from Defendants who are FMLA covered employers in accordance with 29 U.S.C. § 2612(a)(1)(D).

78.

*"It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this chapter."* 29 U.S.C. 2615 § (a)(1).

79.

FMLA leave may be planned or unplanned and may be used *"intermittently"* or on a *"reduced leave schedule"* when *"medically necessary"* as described by 29 U.S.C. § 2612(b).

80.

Defendants' violation of Mrs. Jones' FMLA rights was willful or, in the alternative, carried out with deliberate indifference to her rights.

81.

Mrs. Jones is entitled to recover all economic losses caused by Defendants' interference with her FMLA rights, in addition to liquidated damages, interest, and reasonable attorney's fees and costs.  29 U.S.C. § 2617.

82.

Mrs. Jones is also entitled to liquidated damages for Defendants' willful violation of her rights under FMLA.  29 U.S.C. § 2617(a).

83.

Plaintiff is entitled to an award of reasonable attorney's fees and costs of this action.  29 U.S.C. § 2617(a)(3).

84.

Plaintiff is entitled to an award of interest on the amount of her wages salary and benefits calculated at the prevailing rate.  29 U.S.C. § 2617(a)(1)(A)(l)(ii).

## COUNT III

## Retaliation under Family Medical Leave Act

85.

Plaintiff re-alleges paragraphs 1-3, 5, 11-12, 14-63 and 75 through 84 as if fully set forth herein and further alleges

86.

Mrs. Jones' supervisor, Mr. Jackson, used her FMLA-eligible absences to reprimand her for excessive absences during her employee evaluation even though Jackson and Defendants knew that those absences were pursuant to FMLA leave.

87.

Defendants failed to follow their own progressive discipline policy by issuing Mrs. Jones a Step One without first giving her a write up even though Mrs. Jones had provided a doctor's note for her illness.

88.

Following that evaluation and the Step One, Mrs. Jones was placed on a

P.I.P. (Performance Improvement Plan) which included A statement that she

should participate in traffic calls (these calls occurred during her FMLA leave at

times) and subsequently Defendants terminated her employment, in retaliation for

Mrs. Jones' continued exercise of her federally mandated rights of intermittent

leave as provided by the FMLA.

89.

Defendants' actions in retaliating against Mrs. Jones for exercising her rights

under FMLA were committed with reckless disregard for her right to be free from

discriminatory treatment due to her exercise of her rights under FMLA.

90.

In the alternative, Mrs. Jones' exercise of intermittent FMLA leave was a

motivating factor in Defendants' placing Mrs. Jones on a P.I.P. and subsequently

terminating her employment.

91.

The effect of Defendants' actions has been to deprive Mrs. Jones of a job, as

well as income in the form of wages, health insurance, prospective retirement

benefits, social security, and other benefits due her, solely because of Plaintiff's exercise of her federally mandated rights under FMLA. 29 U.S.C. § 2617(a)

92.

Mrs. Jones is entitled to both equitable and monetary relief for Defendants' violation of FMLA, including but not limited to, back pay, front pay for reinstatement, attorney's fees and costs of litigation. 29 U.S.C. §§ 2614 and 2617.

93.

Mrs. Jones is also entitled to liquidated damages for Defendants' willful violation of her rights under FMLA.  29 U.S.C. § 2617(a).

94.

Plaintiff is entitled to an award of reasonable attorney's fees and costs of this action.  29 U.S.C. § 2617(a)(3).

95.

Plaintiff is entitled to an award of interest on the amount of her wages salary and benefits calculated at the prevailing rate.  29 U.S.C. § 2617(a)(1)(A)(l)(ii).

## **COUNT IV**

## **Disability Discrimination in Violation of ADA/ADAAA-Regarded As Disabled**

96.

Plaintiff re-alleges paragraphs 1-9, 12-13, 15 through 63 as if fully set forth herein and further alleges

97.

At all times relevant hereto, Defendants were subject to the requirements of Title I of the Americans with Disabilities Act as amended.

98.

At all times relevant hereto, Mrs. Jones was an individual with a disability as defined under ADA, because Defendants regarded her as a person with an impairment as defined by the Act.

99.

At all times relevant hereto, Mrs. Jones has been a qualified individual as defined under the ADA, 42 U.S.C. § 12111 (8) and able to perform the essential functions of the job.

100.

Defendants disciplined and terminated Mrs. Jones based on conduct for which it does not discipline its non-disabled employees.

101.

Defendants terminated Mrs. Jones because they regard Mrs. Jones as disabled.

102.

Defendants' actions violated Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability.

103.

Defendants intentionally discriminated against Mrs. Jones by subjecting her to adverse employment actions including, but not limited to, denying her reasonable accommodations and terminating her employment, because of her disabilities.

104.

As a direct and proximate result of Defendants' intentional discrimination, Mrs. Jones has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related benefits, including social security, all in an amount to be established at trial.

105.

Defendants' actions have caused and continue to cause Mrs. Jones to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## COUNT V

## Actual Discrimination/Failure to Accommodate in Violation of ADAAA

106.

Plaintiff re-alleges paragraphs 1-9, 12-13, 15-63, 97 through 105 as if fully set forth herein and further alleges

107.

At all times relevant hereto, Defendants have been subject to the requirements of Title I of the Americans with Disabilities Act as amended by the ADA.

108.

At all times relevant hereto, Mrs. Jones was an individual with a disability as defined by the ADA, 42 U.S.C. § 12102 (1)(A).

109.

Defendants were aware of Mrs. Jones' disabilities and history and record of disability.

110.

Mrs. Jones was at all relevant times a "qualified individual" as that term is defined by the ADA and the ADAAA , 42 U.S.C. § 12111 (8) and able to perform the essential functions of her job with or without reasonable accommodation.

111.

Mrs. Jones' disability substantially limits one or more major life activities.

112.

Mrs. Jones requested accommodation from Defendants relating to her disability including eliminating the marginal job duty of yard checks or at least assuring a rotation of the yard duties when the outside temperatures were extreme and instead assigning Mrs. Jones duties that fall within her job description.

113.

Defendants refused to accommodate Mrs. Jones, and instead insisted that she perform daily yard checks which exacerbated the symptoms of her disability and caused her to have to take time off from work to recover.

114.

Instead of accommodating Mrs. Jones' disability, Defendants disciplined Mrs. Jones and subsequently terminated her employment.

115.

Defendants were each an "employer" within the meaning of 42 U.S.C. 12111(5)(A).

116.

Mrs. Jones repeatedly requested that Defendants accommodate her disability by rotating the new duties of daily yard checks assigned to her.

117.

Mrs. Jones was told that these daily yard checks were an essential function of her job but the new policy indicates that her role, as Traffic Clerk/Manager, responsible for "correcting virtual/physical mismatches in YMS for inbound (full or empty) trailers."

118.

Upon receiving Mrs. Jones's repeated requests for accommodation, Defendants failed to engage in any interactive process with her regarding her request for a reasonable accommodation of her disability.

119.

Defendants refused to provide Mrs. Jones with a reasonable accommodation even though to do so would not have imposed any undue hardship.

120.

Instead, Defendants told Mrs. Jones that she could apply for another job. Mr. Moler, who was a similarly-situated male was accommodated for his history of cancer. Defendants excused Mr. Moler from outside audits.

121.

According to information and belief, Mrs. Jones applied for several jobs. Defendants had job openings, but Mrs. Jones was never invited to interview for those jobs, NOT EVEN ONCE.

122.

Defendants' actions are a violation of Section 102 of the ADA, 42 U.S.C. § 12112, which prohibits discrimination on the basis of disability and requires reasonable accommodation for disabilities.

123.

As a direct and proximate result of the Defendants' intentional discrimination, Mrs. Jones has suffered out-of-pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other job-related economic benefits, including social security, all in an amount to be established at trial.

124.

Defendants' actions have caused, continue to cause, and will cause Mrs. Jones to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses all in an amount to be established at trial.

## **COUNT VI**

## **Violations of Title VII of The Civil Rights Act of 1964, as amended,**

## **Sex/Gender Discrimination**

125.

Plaintiff re-alleges paragraphs 1-6, 12-13, and 15 through 63 as if fully set forth herein and further alleges

126.

Defendants violated Title VII by discriminating against Plaintiff due to her gender/sex because she is female who was working in a department made up males and her male supervisors hold an animus against females.

127.

Defendants treated similarly situated, peers of the opposite sex/gender more favorably than Plaintiff.  For example, Defendants hypercriticized Plaintiff's work, giving her tasks to complete that were less favorable than those tasks given to her male peers.  Defendants allowed Plaintiff's supervisor to dismiss and exclude her in meetings with her similarly situated male peers and to completely ignore her in public.  Defendants allowed Plaintiff's supervisor to exclude Plaintiff from conversations he had with Plaintiff's male peers where they joked around in closed-door meetings which excluded Mrs. Jones.

128.

Defendants' discriminatory treatment against Mrs. Jones was done in part because of sex/gender.  Defendants' actions were in violation of 42 U.S.C. § 2000e et seq.

129.

Defendants' actions were willful, wanton, and intentionally directed to harm Plaintiff in violation of her federally protected rights.

130.

Defendants' actions were reckless and taken in willful disregard of the probable consequences of its actions.

131.

As Defendants' conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including the award of punitive damages against Defendants in an amount to be determined in the enlightened conscience of the jury.

132.

As a result of Defendants' unlawful conduct, Plaintiff has suffered mental and emotional distress in an amount to be determined at trial by the enlightened

conscience of an impartial jury.  Plaintiff has also suffered lost wages and the

benefits of employment, which she seeks to recover from Defendant.

## COUNT VII

## Title VII Sex/Gender Retaliation

### 133.

Plaintiff re-alleges paragraphs 1-6, 12-13, 15-63, and 125 through 132 as if

fully set forth herein and further alleges

### 134.

Plaintiff reported her opposition to sex/gender discrimination she suffered to

Kelvin Hall, Jason Carter, to the Ethics Hotline,  Human Resources, Davida, Stacy,

and Sandy Seide.

### 135.

Defendants retaliated against Plaintiff by allowing her new supervisor to

give her a less than favorable evaluation after she reported discrimination to

Human Resources.  Up until that time, Defendants' evaluations of Plaintiff

reflected that Plaintiff was successful in her job.

136.

Defendants further retaliated against Plaintiff by placing her on a Performance Improvement Plan (P.I.P.) on October 21, 2019 for engaging in protected activity, opposition to sex/gender discrimination.

137.

Prior to her reports to Defendants, Mrs. Jones' work history with Defendants was successful and uneventful.

138.

While on a P.I.P., Defendants terminated Plaintiff citing a pretextual reason.

139.

Defendants attempted to force Plaintiff to quit her job and when that did not work, Defendants were planning to terminate her in retaliation for her reports of discrimination.  Plaintiff's replacement had already been hired and was working in the position of Area Manager and Defendants began hyper-scrutinizing Plaintiff's every move.

140.

Defendants' stated reason for termination was that Plaintiff forwarded some work emails to her personal email was pretext, in part, for Plaintiff's opposition to the sex/gender retaliation.

141.

Defendants' retaliation against Plaintiff violated 32 U.S.C. § 2000-e, et seq.

142.

But for Plaintiff's complaints of discrimination, Plaintiff would not have been hyper-scrutinized, placed on a P.I.P., and subsequently terminated.

143.

Defendants' termination of Plaintiff was retaliation for protected activity under the opposition clause of Title VII's anti-retaliation provisions and violated Plaintiff's right to engage in protected activity.

144.

As Defendants' conduct was willful and deliberate, Plaintiff is entitled to all relief afforded under the statute, including an award of punitive damages.

145.

As a direct result of Defendants' unlawful conduct, Plaintiff has suffered lost wages, mental and emotional distress, humiliation, damage to her reputation, the deprivation of rights under federal law, and is entitled to compensation and punitive damages.

146.

As a consequence of Defendants' unlawful conduct, Plaintiff suffered lost wages and other benefits of employment.

**WHEREFORE**, Plaintiff demands a **TRIAL BY JURY** and that the following relief be granted:

(a)    Issue a declaratory judgment that Defendants' acts, policies, practices and procedures complained of herein violated Mrs. Jones's rights as secured under the ADA/ADAAA;

(b)    Grant Mrs. Jones a permanent injunction enjoining Defendants, their officers, agents, successors, employees, attorneys, and those acting in concert with them, from engaging in any employment practice or policy that discriminates against Mrs. Jones and others similarly situated because of the exercise of their rights under the ADA/ADAAA, sex/gender discrimination, FMLA violations, FLSA violations, Title VII retaliation or because of her participation in this lawsuit;

(c)    Grant to Mrs. Jones judgment in her favor and against Defendants under all counts of this Complaint;

(d)    Order Defendants to make Mrs. Jones whole by providing for her out-of-pocket losses as well as back pay, wages, salary, employment benefits or other

compensation denied or lost as a result of Defendants' unlawful and discriminatory acts, together with interest thereon at a rate allowed by law, all in an amount to be proven at trial;

(e)     Order that Mrs. Jones be reinstated with seniority or, in the alternative, be awarded front pay;

(f)     Order Defendants to compensate Mrs. Jones for back pay and lost benefits resulting from Defendants' unlawful discrimination and tortious conduct;

(g)     Award Plaintiff pre-judgment interest;

(h)     Award Plaintiff compensatory damages in an amount to be determined in the enlightened conscience of the jury to compensate Plaintiff for the mental and emotional damages suffered as a result of Defendants' discriminatory and retaliatory conduct;

(i)     Award Plaintiff punitive damages against Defendants in an amount to be determined in the enlightened conscience of the jury to punish for Defendants for their willful and intentional violations of Plaintiff's federal rights and to deter such conduct in the future;

(j)     Grant to Mrs. Jones a jury trial on all issues so triable;

(k)     Award Mrs. Jones nominal damages;

(l)     Award Plaintiff her costs and expenses, including reasonable attorneys' fees and reasonable expert witness fees together with any and all other costs associated with this action as provided by 42 U.S.C. § §1988, 2000e and 12117;

(m)     Award Plaintiff her unpaid wages;

(n)     Award Plaintiff liquidated damages where appropriate;

(0)     Instruct Clerk to issue summons; and

(p)     Award such additional monetary and equitable relief as the Court deems proper and just.


Respectfully submitted, this 4th day of May 2021.

/s/ Beverly A. Lucas
Georgia Bar No.:  427692
LUCAS & LEON, LLC
P.O. Box 752
Clarkesville, Georgia 30523
T: (706) 752-2001
F: (706) 752-8085
beverly@lucasandleon.com

Attorney for Janice Jones

## <u>CERTIFICATE OF FONT COMPLIANCE</u>

In accordance with Local Rule 7.1D, I do certify this document has been prepared in Times New Roman font, 14 point, in compliance with L.R. 5.1(C) of this Court.

<u>/s/ Beverly A. Lucas</u>
Beverly A. Lucas
Georgia Bar No. 427692